Number 23, 1075 Reed v. Fortive Corporation Mr. Williman, whenever you're ready. Thank you. Good morning, your honors. My name is Michael Williman with Wigdore LLP, counsel for the plaintiff and appellant in this case. I'd like to start by framing this with a citation to a Supreme Court case on Cal v. Sundower, 523 U.S. 75. And in that case, the Supreme Court counseled both courts and juries that when analyzing claims of sexual harassment, there is a requirement to use both common sense and also to maintain appropriate sensitivity to social context. And I would submit that in this case, in granting the defendant's motion to dismiss on both the retaliation and the quid pro quo sexual harassment claims, the lower court lost sight of common sense and disregarded social context entirely. Your honors, this is 2024, and the days in which it is somehow okay for a male head of a company to bring his female subordinate to a corporate apartment building that is there for his use and ask her to join him in the bedroom of that apartment building and for that conduct, as the lower court put it, to be considered innocent or innocuous are over. But shouldn't she have done more at that point than simply walk out? I mean, I'm not talking about the possible retaliation later, about, you know, the second incident, but at that time, shouldn't she have done more? Respectfully, no, your honor. Whether or not we could judge her from a practical standpoint, from a moral standpoint, from a practical standpoint, from a, you know, what would I do if I was in that situation, but the law does not require her to do more. The law requires her to oppose or to resist unlawful harassment. And in this circumstance, if the complaint pleads a sexual advance, which we submit, of course, that it does, quite clearly, then you have to put yourself- What specifically was the sexual advance? I mean, the district court said there was no overtly sexual comment or action or physical contact, so what allegation is the advance? Sure. I think, well, with the primary allegation being that there is no other reasonable way to look at, again, a male supervisor asking his subordinate to join him in a bedroom. There is no circumstance in that context in which a reasonable person, in my view, a reasonable person could look at that and say that he was not making a sexual advance. Any time a male supervisor does something which can have sexual implications, and I agree with you that it can, that is enough to be a quid pro quo, to suggest that you can go further and quid pro quo? On a pleading stage, absolutely. I mean, this is, again, a stepping back, because I did say that no reasonable person could view it differently. But I'm putting too big a burden on myself here. I mean, this is a pleading. This is a complaint in which the allegations must be deemed to be true. If the conduct is susceptible to be, excuse me, the allegations are susceptible to being viewed as a sexual advance, that's all that's required on this pleading stage. And for the, essentially, to your question, is that if he is making a sexual advance, which the court, in my view, is required to be accepting at this stage, and she, after he asked her five times, doesn't go in and just leaves the room? That is an indication to him that she's resisting his sexual advance. But then she has lunch with him, right? Correct. And it's perfectly friendly as far as, there's no indication that she says, other than him asking her a question about whether she's in a relationship, that she says she feels threatened, uncomfortable, pressured, I don't know how they got back, but they had driven there together. I'm assuming they drove back together. How is, applying the common sense that you and the Supreme Court think we should apply, how is a person to know, once they've gone through that lunch, that she is upset, feels harassed, feels threatened, and is telling him no? Well, I think there's two moments in time, right? She's telling him no when she walks out of the room. The fact that she then has an interaction with him that would be deemed to be friendly doesn't undo that no. And there's a lot of- If we're talking about susceptible to different perceptions, doesn't that immediate follow on conduct? Not that three weeks later they had lunch and it was okay.  Doesn't that inform a reasonable person's assessment of her conduct in the apartment or at the apartment? No, for two really important reasons. One is that you could line this courtroom up with the victims of Harvey Weinstein, that right after meeting with him, wrote him nice notes from that point forward for years that followed. And that didn't make them not victims. There's a whole series of literature on rape myths and the way that people react after sexual harassment and obviously even worse. Could you address the retaliation claims after she makes, retains counsel and makes a complaint? I mean, this is conceded by the defendant to be protected activity. So the only question is the district court's finding that this wasn't caused, which I must say is very difficult given the timing. And that the retaliation was sufficient to be retaliation. So could you address that? Because there I must say, I don't see why it wasn't retaliation. Sure, and there are two points I'd make. First, your honor, the fact that they concede that that was protected activity is telling. Because it's based on the exact same allegations that they claim that no reasonable person could possibly determine amounted to a violation of a law. Don't go back to the other one, stay with this one. Understood, understood. So there are two issues with the district court's determination on this. The first, and the arguments that are continuing to be made by defendants. The first is that the lower court just applied the wrong standard. The lower court applied the adverse action standard. The defendants argued in this case for the adverse action standard. The adverse action standard is not the standard under retaliation. The retaliation standard is far more liberal. It's anything that would dissuade a reasonable worker from engaging in protected activity. And in this case, we respectfully submit that if you look at the rights, even if you look at the wrong standard, but if you look at the rights- What was that action, employment action? Sure, so right immediately after we sent the letter to the defendants in this case, they instituted a number of monitoring programs on our client's computer. Where they effectively, literally got her entire digital footprint, copied her hard drive, started tracking her keystrokes. Put various, again, different monitoring things on her computer so that they were, and we allege also upon information and belief that these were actions that were also targeted towards her individual personal accounts. Are you claiming that if you can go forward with this case, you can show that some of these things were particularly adverse? Absolutely, I mean, how discomforting it is to know that every single thing that you are doing on your computer, and have done ever on your computer, is literally at the moment you're doing it, being watched down to the keystrokes you're putting in. That is really, really discomforting. And absolutely, if someone knew that that was going to be the result of complaining about discrimination, a reasonable person could certainly say, you know what, I think I'm just going to stay quiet on this one. Thank you. Thank you, Counsel. Ms. Haar? Good morning, and may it please the court. My name is Jamie Haar of Ogletree Deacons. I'm here on behalf of appellees. Despite appellant's best attempts to characterize the lower court's decision as a antiquated view of sexual harassment in the workplace and not having reason and common sense or social context, that is not what this case is about. This case turns on whether appellant plausibly alleged facts sufficient to state a claim upon which relief may be granted. Putting aside appellant's attempts to resurrect her claims by misstating the applicable law and drawing upon conclusory allegations of fact which do not need to be taken as true on a motion to dismiss. The lower court in this case properly held that appellant failed to plausibly allege that she was subject to a sexual advance, that she resisted or rejected that advance. And even if appellant plausibly alleged an advance or rejection, she failed to plausibly allege retaliation. She failed to allege retaliation following her internal complaint. She failed to plausibly allege quid pro quo and failed to allege constructive discharge. Why didn't she plead enough to be retaliation when she brought the complaint the second time, which is alleged, which is conceded by your client to be protected activity? Why isn't at least at the pleading stage the fact that she was being monitored constantly, immediately after she did that, enough so that we would want to know more about what was going on? I mean, I might agree with you about what you say before, but I find it very hard to say that there isn't enough to get by on a causal link when somebody brings a complaint and immediately after, the way she is treated changes. Yes, Your Honor. On appeal, appellant relies primarily, as you just mentioned, the allegations that monitoring programs were added to her computer. This is the case despite the fact that there are no allegations that the alleged monitoring programs prevented her from utilizing her computer to perform work, or alleged to have been unique to her. And while- But why isn't it enough to say that there was a significant change in monitoring activity, which we would then want to know more about? Your Honor, I would submit that the Barencroft case that we say to in our appellate brief, and just to correct for the record, that case did assess the retaliation claim under the correct standard, would well dissuade a reasonable person from wanting to engage in protected activity. And in that case, the court, which this court affirmed the district court's decision, that that was not sufficient to state a claim for retaliation and did not deem it action that would well dissuade a reasonable worker from making or supporting a charge of discrimination. And in that case, the court cited to Turley versus ISG. And in that case, the court held that being monitored at work, installation of surveillance cameras, hiring a private investigator. Those are types of actions, again, that would not dissuade a reasonable employee from engaging in protected activities. So I would- Let me ask you. The district court said that there wasn't enough to show causation. I found that rather odd when there was such a short time. I mean, we might argue about whether a district court could correctly find this wasn't sufficiently retaliatory. But to say that when immediately after a complaint, which is conceded to be valid, is made, an action is taken, that that isn't enough to find causation strikes me as odd. I would submit, Your Honor, that temporal proximity is not the only factor that is looked at on a motion to dismiss. No, no, time isn't. But I'm just saying, isn't that enough? And if the district court went on that to some extent, wasn't the district court misguided on that? I don't believe so, Your Honor. And I would submit that appellant failed on appeal to address the district's courts, finding that there was a causal relationship between her protected activity and the computer monitoring. And so, to the extent, Your Honor, takes umbrage with that holding at the- I don't take umbrage with any, I just ask questions. Yes, Your Honor. And so, does the court have any other questions? I will just note that, to the extent Your Honor's find that appellant did state a claim here, I submit that Fortiv should be dismissed from the case. Fortiv was not Reed's employer, not a single employer or a joint employer. And so, to the extent Your Honor's find that there- Well, let me ask you about that. If we were to decide against you and send it back for something, did the district court make any findings on Fortiv? And should we or should we just let the district court decide? I mean, obviously, we decide for you at the end of the case. But if we decide that something goes wrong, has the district court told us anything about Fortiv? Should we do it or should we just let the ordinary courts, the district court, decide the Fortiv issue first? I would submit that this court should address the joint employer, single employer theory that appellant has put forth. While the district court did not reach that issue, I submit that this court should. And then also, just on the topic of waiving and abandoning claims on appeal, I submit that appellant waived and abandoned claims as to hostile work environment, disparate treatment, aider and abetter claims as to Mr. McCauley, and several adverse actions as to her retaliation claims. So, for example, the job applications that she made to other companies, it taking a few weeks for an independent investigator to look into her internal complaint. Really, the only thing that she focuses on is the monitoring programs that were put on her computer. And again, I submit that there's no allegation that they were unique to her. It didn't, there's no allegation that she was prevented from using her computer. And again, the case law is clear that that is not sufficient to dissuade a reasonable person from engaging in protected activity. Thank you. Thank you, counsel. We'll hear from both. Thank you. Just on that very last point for a moment, the district court did comment upon the issue of the joint and single employer relationship, and said in a footnote, though it didn't decide the issue, that a plaintiff need not plead that the parent exercises total control, and that often whether the parent entity exercises sufficient control is a question of fact, not suitable to resolution on the motion to dismiss, which is true in this case. I will say that in pages 23, 22 to 25 of our brief as well, we lay out. And this is not even a remotely close call. These companies are the same. I mean, they're reporting into each other. The policies that one has to follow are promulgated, not just by the other, but our client was required to complain to Florida. That's not like the choice that she made. So- Can I direct you back to the retaliation question? Yes. Your friend just cited the Fair and Crook case where there was monitoring recording equipment that was installed in retaliation. How do you respond to that? Yeah, so in that case, it's really unclear what it was that was actually being alleged and what was being done to that plaintiff. There's a vague allegation that there were numbers on her computer, and that someone then told her that that meant that she was being recorded by the company. So this is a far cry from that, which is literally- Your brief argues that that case was wrongly decided. I'm wondering what your position is. I do think it's wrongly decided in the sense that, look, if you engage in protected activity, and then you know that they're going to put a camera in front of your face. Well, sorry to interrupt, but we have to follow it even if it's wrongly decided for now. So the question is, is it distinguishable or are you asking us just to revisit it? So the first part of my answer was distinguishing it, which is that the activity in that case, it is, first of all, it's unclear, but what is clear is, it is nowhere near as invasive as what is at issue in this case, which is a complete digital footprint download and a complete monitoring of every single keystroke and action that is being taken in this case, attempts to get into personal accounts, things that go far beyond what happened in that case, that issue in this case. Did that other case go solely on what was a retaliation, or was there also a finding of no cause in that case? I believe in this case there was a number of- See, one of the things that worries me here is that the district court seemed to think there was no cause. And I wonder if the district court was wrong on no cause, and whether it isn't up to the district court to look more carefully at the allegations, these are allegations, to see whether it would, it could be distinguished from the earlier case. If there was error on causation. I think that's right. Your Honor, may I have ten seconds to just one quick one? Go ahead, you can wrap up. The original sexual harassment and rejection, it is a critical, critical that this court reverse the lower court's decision on this point. It would require a woman to go way out of the bounds and subject herself to way more egregious conduct, and not put a stop to things early in order to bring a claim under the law. It is a one free strike for people who wish to engage in sexual harassment. And just to your Honor's point, there's a case, I don't have the number with me because I just remembered off the top of my head, of Guzman v News Corp that was decided, and there's a quote, I'm paraphrasing, but pretty closely. That civility towards a harasser is not an indication that you weren't harassed, particularly when that harasser is your supervisor and maintains complete control over your employment. Thank you, Your Honors. Thank you, counsel. Thank you both. We'll take the case under advisement.